Good morning. May it please the court, on behalf of the petitioner Randall Ross, Anthony Bornstein, Assistant Federal Public Defender, Your Honors, I'd like to save two minutes, if I may, for rebuttal. Your Honors, Mr. Ross is entitled to an evidentiary hearing on his Sixth Amendment ineffective assistance of counsel claim. Specifically, he is entitled to a hearing on the subject of Officer Steele's grand jury testimony. He is entitled to learn whether or not the officer committed perjury at his grand jury testimony on the subject of Mr. Ross' behavior at the time of the shooting. The question at the heart of this briefing has been whether Mr. Ross has been diligent to satisfy the AEDPA's requirement for an evidentiary hearing on this issue. Mr. Ross has been diligent under the standards established by the Supreme Court. In the court's year 2000 decision in the Michael Williams case, the court interpreted subsection E2's diligence component and held that a petitioner must make a reasonable effort to investigate and pursue his claims. Mr. Ross made such a reasonable effort in this case. He articulated in his post-conviction petition this precise ineffective assistance claim. He then submitted a very precise deposition in which he explicated the gravamen of his complaint that the officer must, in light of his admitted falsification of the police report, have testified falsely in front of the grand jury. Pardon me, counsel. There are two theories that Sergeant Steele could have adopted. One, that he ducked under the dashboard and was hit while acting in a cowardly way, and therefore he lied in his police report when he said that he was chasing Ross and Ross was running away. What other theory is there? I don't believe there is another theory. Didn't he tell both stories at the trial? What more could you get from the grand jury testimony? What the jury never learned was that this officer evidently committed perjury in front of the grand jury. What do you mean evidently? He told one of two stories to the grand jury. He told them both at trial. What was there at the grand jury discoverable that wasn't coming out of trial? He testified at trial that Mr. Ross stood and aimed at him while shooting at the police and the officer. On the other theory, which he admitted that that report was it was was a lie because he was afraid he was ashamed that he was actually hiding under the dashboard when Ross was shooting at him. Right. So those are the two theories. They came out of trial. He was impeached at trial. What more could you have gotten out of a grand jury transcript than if he told the former story that Ross was looking at him and shooting at him, which would be more inculpatory. He got that out and he got the second version out also. What was kept from your client by not getting the grand jury testimony? Whether or not the police officer in his sworn grand jury testimony testimony committed perjury before that body. The jury never learned that your honor. So you wanted you want you think that there would be more evidence of the officers untruthfulness other than that was just brought out by impeachment at trial by getting the ability to put forward at trial at a retrial that he committed perjury before the grand jury. So you're not looking for more evidence of conflict between the two stories. You're just simply trying to show that this cop lied to the grand jury. That is exactly correct. I come back to Judge Bass question. What's the incremental benefit that you see flowing from the fact that here's the cop admitting that he lied to the jury, to the trial jury? What will be added of significance to show that he perjured himself in front of the grand jury? There would have been a material. It would have been materially more significant for the jurors to learn if this officer actually committed perjury in prior testimony. But to what end? To what end? To bolster the notion that your client was shooting while running as opposed to shooting while standing? Exactly. And to undercut the testimony of the police officer on that. It had been undercut. It had been undercut to a certain extent. The inconsistency. Why is it just why isn't the grand jury testimony just cumulative? Because of the difference, the material difference between police officers admitting to falsifying a police report to in effect committing a crime of perjury before a grand jury. The cases that we've cited in our brief discuss the. You would have been entitled to an instruction that admitting perjury somehow impeaches the witness more than when he admits on the stand that he lied. I don't know that there would have been a jury instruction to that effect. However, it would have been a the evidence would have been that much more significant that this officer had actually committed perjury rather than simply falsified his police report. Now you were talking. I think we have that point to understand your diligence point. If you were talking about did you seek an evident you're seeking an evidentiary hearing in the district court. Yes, you're OK. Was there a. Did you see. Seek an evidentiary hearing in the state courts in the state court. The only evidence of that is that the court has requested the the so-called Ogden printout of the computer printout of the court proceedings. There was a hearing at which no testimony was submitted as indicated in line 20 of that entry 20 of that document. So there was no oral testimony provided at that hearing and optimally state council would have developed that evidence in an evidentiary hearing in state court. But the question for this court then is even without that evidentiary hearing in state court, whether Mr. Ross's efforts were reasonable and therefore diligent under the requirements of the two. It seems questionable. So you can address my concern. Seems questionable to me that it's due diligence to not develop the factual basis for what you want to argue in the federal habeas court. And because it is a state prisoner. So as I understand it, maybe I'm wrong. We really don't know what he said in the grand jury proceeding. Right. We don't know what we said. We don't know because that wasn't developed in the state court proceeding. Maybe it wasn't developed because it would not have been discoverable or maybe it would have been discoverable. And and counsel dropped the ball and didn't discover it. In part, it's because of the court denying any further inquiry on the subject. The court issues a one sentence opinion letter denying the claims after Mr. Ross has discussed very clearly the likelihood of perjury in the grand jury. The court then adopts verbatim a finding of fact that the grand jury testimony was not discoverable, even though the only evidence on that subject had come from trial counsel in a self-serving affidavit. That's a state law question. I think whether whether the grand jury testimony was discoverable. The due diligence is a federal law question for us now. Well, it just seems to me problematic for us to say there was due diligence. When we have to speculate about whether under state law, it would have been discoverable, whether it could have been discovered. Judge said it wasn't discoverable, right? Well, the only discussion of the discoverability was addressed in terms of state statutory discovery law and not the Brady principle, which is a federal constitutional matter. There were in the state court proceedings, three references to the Brady principle and in the supplemental excerpts of record in the memoranda up through the briefs before the Oregon appellate courts, pages 7, 43 and 55, references to the constitutional underpinnings of Brady. Is there any is there any U.S. Supreme Court case that has ever applied the principle of Brady, which requires a prosecutor to disclose favorable evidence to say that grand jury testimony that's confidential under a state's internal laws has to be disclosed in discovery? The entire line of Supreme Court. My question is, is there any Supreme Court case that's ever said that or suggest that because it is an AEDPA case? The controlling precedent would be the Giglio Kyle's Bagley line of cases regarding evidence that would impeach a witness's credibility of principal witnesses. That's not answering the question. Are those grand jury material that have to be fixed? Those Supreme Court decisions have not specifically been handed down in the context of grand jury testimony. That's a problem, it seems to me, for your client's position in a case under the AEDPA where we have to show that the state court decision is contrary to an unreasonable application of Supreme Court precedent. Well, I guess you're saying it's an unreasonable application of that line of cases on this court's decision in Bradley versus Duncan. There are the court. This court very clearly states that you do not have to have a case on all fours. It is the principle at issue in the Supreme Court's decisions. That is the clearly established law for purposes of the AEDPA. I understand that, but I'm trying to find out if there's any principle that's been stated with regard to discovery of grand jury testimony. The Supreme Court decisions under Brady, Your Honors, have not been handed down in the context of grand jury testimony. However, our brief cites lower court decisions interpreting those decisions. It goes to the unreasonable application ground. Pardon me, Your Honor? It goes to the unreasonable application ground. Yes, and the fact that the state court, circuit court, was hindering the development of this claim under E-2 by applying Supreme Court law indirectly to hold. To try and wrap this up, there's no evidence in the record that the state courts hindered access to an evidentiary hearing to determine whether or not he lied. That step wasn't taken. Is that correct? Mr. Ross's post-conviction counsel did not submit further evidence at the post-conviction hearing, but what he did submit. That's part of it, but I understood that from your prior answer. Did he ever ask for an evidentiary hearing to bring the officer in or anything like that to try and get evidence as to what he testified before the grand jury, so as to get a clean ruling that that testimony with the proper offer of proof would or would not be accessible under state grand jury secrecy law? At the post-conviction hearing, such development of testimony was not requested, but at the earlier new trial hearing in the state criminal trial, counsel was presenting as a basis for the new trial the concern over the officer's potentially false grand jury testimony, and he very clearly raised that, and the court denied the motion for new trial. I think you've answered my question. Thank you, Your Honor. I'm going to please the court. Denis Bagnier, appearing before the respondent. You know, it strikes me, to get you to the point of concern to me, in terms of the government's position, that the impeachment value of proven perjury, if it could be proven, is more than the impeachment value of a false police report, so that appellate has that much to their argument. Perhaps, Your Honor, even though in light of all the other evidence that was introduced at the trial, the ballistics testimony, for example, that showed that Petitioner was not running, in fact, at the time that he fired the shots, the value of that impeachment, that hypothetical impeachment, would appear fairly limited, especially in view of the fact that the officer was impeached with his police report. But really, what the root of the issue here is, is that there is absolutely no evidence that the officer ever lied to the grand jury, and this really goes straight to the due diligence inquiry in order to obtain an evidentiary hearing. As is argued in the State's brief at page 30, in fact, the post-conviction, the State post-conviction process would have afforded Petitioner with a lot of opportunities to, yes, to subpoena the officer, to subpoena the district attorney who presented the case at the grand jury to do some investigation of this claim, and the fact is the record shows absolutely no diligence at all. There was never any request to introduce any evidence of this type. If the appellant had been asked, not the appellant, if the officer had been asked at a hearing, what did you tell the grand jury? Would the Oregon law have permitted him to answer? Okay, let's say it's secret. You can't discover the testimony in the grand jury, but could there be directly, but could there be a question to the prosecutor or to the detective? I would be happy to submit a supplemental memo on that. My understanding of Oregon law is that while the grand jury notes, if they even exist, they don't exist in every case, are available, those are not discoverable. However, it would be possible, my understanding is, to, yes, to subpoena the district attorney, to subpoena the officer who did testify at the grand jury. And then to follow up on a point made by Judge Fisher, even if it were not discoverable, if an objection would have been sustained to that, there's no proffer here of that kind of question, right? There is none. And, again, we would emphasize that, really, the argument, even under Brady, is circular, because the argument is essentially that this testimony, this hypothetical grand jury testimony, would be discoverable if it existed, but it's not if it doesn't. So it really is a circular argument. And, in fact, as the Court also remarked, there really is absolutely no- I'm not sure it's circular, but it does appear to lack foundation. I suppose that is a better way to say it, Your Honor. And, as, in fact, Your Honor pointed out as well, there is no Supreme Court precedent on point saying that Brady applies to grand jury testimony. There simply is none. Well, that may be, but you've just said that the prosecutor could be subpoenaed in a hearing, which implies, at least to me, that the prosecutor could, under some circumstance, be required to disclose whether the officer had told an absolutely different story from the story he was now putting forward at trial. And, therefore, unless this admission on the stand was a surprise to the prosecutor as well, the prosecutor would know that his police officer, when presented to the grand jury, had lied. So it doesn't seem, under those circumstances, it's much of a reach to say that Brady clearly would require that kind of disclosure pre-trial. Perhaps not, Your Honor. But, really, again, to bring really this down to the question here, the question is did the petitioner exercise due diligence in seeking to develop this particular evidence? And the record clearly shows that there was never even any attempt to develop this particular kind of evidence in the state court. There were no subpoenas. Nothing was ever presented to the post-conviction court to suggest even that Sergeant Steele ever lied to the grand jury. The only thing that the post-conviction court had were the post-conviction petition, in which the petitioner says, essentially, I believe the sergeant lied to the grand jury, and, again, the petitioner's deposition testimony where he repeats again the officer lied to the grand jury. But, as we point out in our brief, that is simply not developing the particular evidence that the petitioner now seeks to develop at an evidentiary hearing at the district court level. And so, for this reason, petitioner is not entitled to an evidentiary hearing in this case. Unless the court has any more questions. Just on that last issue, I assume this is such an unusual fact pattern, that the precedence on due diligence under the ADIPA standard to get a hearing, that we don't have any precedence from any circuit that are related to anything like this grand jury testimony issue? Well, I mean, this is obviously, you know, fairly fact-specific, but, I mean, there is precedent in the sense that, for example, Cooper Smith, which the state referred to in a 28-J letter submitted to this court a few weeks ago, Cooper Smith spells out what has to be done in order to show due diligence, and there has to be an attempt to develop the particular type of evidence at issue. And the fact that petitioner did not, in this case, seek in the State Post-Confiscation Court to develop the same type of evidence, or any evidence at all, as to this claim, is fatal for that reason under Cooper Smith. All right. Thank you. I'll give you a minute to reply. Thank you, Your Honor. I'd like to make two points in rebuttal. First, counsel has proposed that the evidence would not have been significant had it been developed in light of the other ballistics and such. That is not correct, Your Honor. The most serious conviction upon which Mr. Ross was convicted was the attempted murder charge. And on that particular charge, the issue of his intent was very much the issue, and the jury was deeply divided on that. It was a 10-2 verdict, which demonstrates that at least two jurors had substantial misgivings about the quality of the State's proof. And for that reason in particular, the importance of the grand jury testimony and the officers' perjury vellemin was very significant. Second, the State has argued that it was lack of foundation or that the evidence of likely perjury was just too speculative. And that is also not correct. The most significant point on that subject is on page 9 of our brief, quoting Mr. Ross's deposition at pages 46 to 48, in which he states very clearly that this man, the officer, obviously testified before the grand jury and that he is testifying to something different in court and that, quote, there has to be perjury someplace. And that put the post-conviction court on notice that this particular subject needed to be explored further, yet it did not. Thank you, Your Honor. Thank you. Thank you. We thank counsel for their argument, and the case is submitted.
judges: Fisher, Gould, Bea